IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 19, 2002

## STATE OF TENNESSEE v. JERRY ALLEN KETCHUM

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S43622     R. Jerry Beck, Judge**

_____

**No. E2001-02008-CCA-R3-CD**
**May 17, 2002**
_____

The Defendant entered a plea of nolo contendere to attempted aggravated sexual battery. Pursuant to his plea agreement, the Defendant received a four-year sentence, with the manner of service of the sentence to be determined by the trial court. Following a sentencing hearing, the trial court ordered that the Defendant serve the four-year sentence in the Tennessee Department of Correction. The Defendant now appeals, arguing that he should have received some form of alternative sentencing. Concluding that the record supports the trial court's denial of alternative sentencing, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID H. WELLES, J., joined.

Nat H. Thomas, Kingsport, Tennessee (on appeal); and Larry R. Dillow, Kingsport, Tennessee (on appeal and at trial), for the Appellant, Jerry Allen Ketchem.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; James Goodwin, Assistant District Attorney General; Barry P. Staubus, Assistant District Attorney General; and Teresa Murray-Smith, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The Defendant was indicted by the Sullivan County Grand Jury for aggravated sexual battery, a Class B felony. Pursuant to a plea agreement, the Defendant entered a plea of nolo contendere to attempted aggravated sexual battery and received a four-year sentence, with the manner of service of the sentence to be determined by the trial court. At the sentencing hearing, the parties agreed to the following stipulation concerning the evidence in the case:

If this matter had gone to trial, the State's proof would have been that on or about October 11th, 1999, the victim [C. O.][1] was in her mother's room, laying [sic] on the bed, watching television. The defendant came into the room naked, pulled down [C. O.'s] panties and rubbed his penis over her buttocks. He then attempted to roll [C. O.] over. At that time, [C. O.] began crying loudly and struggled away and ran to her brother's room.

Her brother, Ryan,[2] whose room is upstairs, stayed up the rest of the night while [C. O.] was there so that he could protect her.

[C. O.] was taken later that morning to be examined by Dr. Ben Altman, at the Bristol Regional Medical Center Emergency Room. Dr. Altman took a history, including the victim describing what had happened to her the night before.

Dr. Altman examined the victim and discovered redness in the perianal region. Dr. Altman concluded that this was consistent with sexual assault.

These acts all occurred in Sullivan County, Tennessee.

. . . .

. . . The victim was seven (7) on October 11th, 1999. Less than thirteen (13) years of age.

At the sentencing hearing, the Defendant presented the testimony of two longtime friends, who stated that the Defendant had a good reputation in the community and that he had a good reputation for truth and veracity. The Defendant's adult daughter and adult son from a prior marriage next testified that the Defendant had been a good father to them and would be a good candidate for probation or alternative sentencing.

The Defendant then testified. He stated that he was fifty-eight years old at the time of the sentencing hearing and that he had been a lifelong resident of Bristol, Tennessee. The Defendant testified that he had worked for Eastman from 1977 until his recent termination due to the entry of his nolo contendere plea to attempted aggravated sexual battery. The Defendant discussed his filed written response to the Sexual Offender Risk Assessment that had been performed on him, in which he maintained his innocence. However, the Defendant testified that he was willing to undergo any treatment in order to get probation.

---

[1]It is the policy of this Court to refer to minor victims in cases of sexual abuse by initials rather than by name.

[2]Ryan and C. O. were the Defendant's step-children at the time of the offense.

The Defendant testified that he was working as an electrician with his two brothers at the time of the sentencing hearing. He testified that he had been married and divorced twice. In his opinion, his second former wife was responsible for the false accusations of aggravated sexual battery because the Defendant had accused her of adultery and because he told her she was going to "lose the children."

On cross-examination, the Defendant admitted that his polygraph test (taken as part of his evaluation by Counseling and Consultation Services in Johnson City, Tennessee) showed deception. The Defendant reported that he quit drinking two years prior to the sentencing hearing, after his last driving while intoxicated conviction in November of 1999.

Finally, the defense presented the testimony of Brenda Darlene Brown, who stated that she manages a bridal boutique and is currently involved in a relationship with the Defendant. Ms. Brown testified that the Defendant is a "wonderful father" and "an all round good person." She explained that she had written the Defendant's response to the Sexual Offender Risk Assessment for him, because the Defendant "writes slow."

The State presented the testimony of the victim's father, who discussed the impact of the crime on his daughter. The Court also considered the pre-sentence report and the Sexual Offender Risk Assessment, both of which had been filed prior to the sentencing hearing.

The Defendant now challenges on appeal the trial court's order that he serve his entire four-year sentence in the Tennessee Department of Correction. When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to show such consideration, the review of the sentence is purely de novo. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The presumptive sentence to be imposed by the trial court for a Class B, C, D or E felony is the minimum within the applicable range unless there are enhancement or mitigating factors present.

Tenn. Code Ann. § 40-35-210(c). If there are enhancement or mitigating factors, the court must start at the presumptive sentence, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence in the range as appropriate for the mitigating factors. Id. § 40-35-210(e). The weight to be given each factor is left to the discretion of the trial judge. Shelton, 854 S.W.2d at 123. However, the sentence must be adequately supported by the record and comply with the purposes and principles of the 1989 Sentencing Reform Act. State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).

When imposing a sentence, the trial court must make specific findings of fact on the record supporting the sentence. Tenn. Code Ann. § 40-35-209(c). The record should also include any enhancement or mitigating factors applied by the trial court. Id. § 40-35-210(f). Thus, if the trial court wishes to enhance a sentence, the court must state its reasons on the record. The purpose of recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. State v. Ervin, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing the impropriety of the sentence imposed. Ashby, 823 S.W.2d at 169.

Specifically, the Defendant argues that he should have been granted some form of alternative sentencing. Tennessee Code Annotated § 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration . . . .

A defendant who does not fall within this class of offenders "and who is an especially mitigated offender or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Furthermore, unless sufficient evidence rebuts the presumption, "[t]he trial court must presume that a defendant sentenced to eight years or less and not an offender for whom incarceration is a priority is subject to alternative sentencing and that a sentence other than incarceration would result in successful rehabilitation . . . ." State v. Byrd, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993); see also Tenn. Code Ann. § 40-35-303(a). The Defendant, as a standard offender convicted of a Class C felony, see Tenn. Code Ann. § 39-13-213(b), is presumed to be a favorable candidate for alternative sentencing.

However, all offenders who meet the criteria are not entitled to relief; instead, sentencing issues must be determined by the facts and circumstances of each case. See State v. Taylor, 744

S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing Moss, 727 S.W.2d at 235). Even if a defendant is presumed to be a favorable candidate for alternative sentencing under Tennessee Code Annotated § 40-35-102(6), the statutory presumption of an alternative sentence may be overcome if

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1)(A)-(C). In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated § 40-35-103(5), which states, in pertinent part, "The potential or lack of potential for the rehabilitation or treatment of a defendant should be considered in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(5); see also State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

More specifically, the Defendant argues that he should have been granted probation. In determining whether to grant or deny probation, the trial court may consider the circumstances of the offense; the defendant's criminal record, background and social history; the defendant's physical and mental health; the deterrent effect on other criminal activity; and the likelihood that probation is in the best interests of both the public and the defendant. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). The Defendant bears the burden of establishing suitability for probation. Tenn. Code Ann. § 40-35-303(b); Ashby, 823 S.W.2d at 169.

The trial court made detailed findings and carefully weighed all of the appropriate factors, both favorable and unfavorable, in determining that the Defendant had not established his suitability for probation. The trial court considered the information in the presentence report, the Sexual Offender Risk Assessment, appropriate victim impact evidence, and the testimony of the witnesses at the sentencing hearing. The trial court pointed out that certain factors weighed in favor of the Defendant's request for probation. These favorable factors, as pointed out by the trial court, include that the Defendant would have community support if he received alternative sentencing, that the Defendant had a good work record at Tennessee Eastman, that the Defendant had worked "successfully" from the early 1970's until the conviction, that the Defendant is a good father to his adult children from a prior marriage and that the Defendant has "solidified his relationship with God." The trial court then assessed the negative factors, including the Defendant's prior criminal convictions, the negative aspects of the Sexual Offender Risk Assessment, and the victim impact evidence. The presentence report reflects that between April 3, 1996 and May 17, 2000, the Defendant received two speeding convictions and three driving while intoxicated convictions. During the same time period, the Defendant also received convictions for criminal trespass, public intoxication, driving without a license, assault, and driving while his license was suspended. The trial court also took note of the fact that the Defendant abused a position of private trust in committing the offense. See Tenn. Code Ann. § 40-35-114(15). The trial court carefully balanced

all of the relevant factors and determined that "the negative factors indicating a denial of probation outweigh any potential favorable factors set out in any of the proof or anything submitted."

In our view, the record supports the sentence imposed. The Defendant complains that because he entered an Alford plea,[3] the trial court should not have considered any negative aspect of the Sex Offender Risk Assessment that was based on the Defendant's denial of guilt. Our supreme court has held that a Defendant's failure to acknowledge culpability for his or her actions may also support a finding that a sentence of confinement is necessary to avoid depreciating the seriousness of an offense. See State v. Gutierrez, 5 S.W.3d 641, 647 (Tenn. 1999); see also State v. Donald Paul Presley, No. E2000-00592-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 629, at *26 (Tenn. Crim. App., Knoxville, Aug. 14, 2001); State v. Thomas Wayne Shields, No. W2000-01524-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 18, at *33 (Tenn. Crim. App., Jackson, Jan. 4, 2000). Further, this Court has held that an Alford plea does not prohibit a trial court from considering a defendant's failure to accept responsibility for his criminal conduct as it relates to his rehabilitation potential. State v. Homer L. Evans, No. E2000-00069-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 196, at *14 (Tenn. Crim. App., Knoxville, Mar. 20, 2001). Finally, in our view, the Defendant's criminal history and his abuse of the position of trust as a step-father are sufficient to rebut the presumption that he is a favorable candidate for alternative sentencing, including probation.

For these reasons, we conclude that the presumption of alternative sentencing was sufficiently rebutted in this case and that the trial court thus did not err by imposing a sentence of confinement. Accordingly, we AFFIRM the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

---

[3] In entering an Alford plea, a defendant "faced with strong evidence of guilt and no substantial evidentiary support for [his] claim of innocence" may refrain from admitting his culpability and accept a sentence. North Carolina v. Alford, 400 U.S. 25, 91 (1970).